GEORGE W. RIDER *vs.* T. D. PEASE & others.

Hampden.    Sept. 29, 1875.— Feb. 29, 1876.  AMES, DEVENS & LORD, JJ., absent.

A. and B., members of a firm, assigned a patent right to C. and D., and by a contract, made the same day with C. alone, agreed that, if C. should become dissatisfied with the purchase within a certain time, they would repurchase of him the patent right and repay him the amount paid therefor, provided he should give them notice thereof within a certain time. In an action on this contract by C. against the firm, it appeared that C. became dissatisfied and gave the defendants notice thereof, requiring them to repurchase. The plaintiff testified that, within the time agreed, he asked A. what he would do about the contract, who said he would try to get another member of the firm to help the plaintiff out of it, and that, after the action was brought, the one, with whom the conversation was had, refused to repurchase. The plaintiff also testified that, after the expiration of the time stated in the contract, but before the action was begun, he had a conversation with B., who said he could do nothing about the repurchase, as he was too poor to raise money. The judge ruled that there was not sufficient evidence of a refusal to repurchase on the part of A. to warrant the jury in finding a waiver of a tender of a deed, and that the refusal of B., on the ground of his poverty, did not bind A., directed a verdict for A. and reported the case to this court, a new trial to be ordered if the ruling was incorrect. *Held*, that there was evidence sufficient to warrant the jury in finding that the defendants had refused to perform the contract; that the ruling was incorrect, and that a new trial must be granted.

CONTRACT against T. D. Pease, William Thayer and Thomas Campbell, copartners doing business u nder the firm name of the New England Washer Company, upon an agreement signed by

said company, and dated October 11, 1872, which, after reciting the sale by the defendant to the plaintiff of " the right to make, use and vend a certain patent right for improvement in wash boilers granted to J. C. Tilton by letters patent of the United States," proceeded as follows :

" Now, therefore, the said New England Steam Washer Company, in consideration of the premises aforesaid, hereby promises, covenants and agrees to and with the said George W. Rider, that if he, the said Rider, shall, at the end and expiration of one year from and after the date of these presents, become and be dissatisfied with his said purchase above mentioned, then said New England Steam Washer Company will purchase of said Rider said patent right, and repay to him the amount by him paid to said company for said patent right, less and deducting from said amount so paid by said Rider the amount of all such sales as said Rider may have made of said patent right for said territory above mentioned, or any part thereof, at a rate not less than ten dollars for every one thousand population living upon the territory which may be by him sold, and in case said Rider shall sell said patent right for said territory, or any part thereof, for any sum or sums at a less rate than ten dollars for every one thousand of population living upon said territory sold, then said Rider shall allow to said company and deduct from the amount to be paid him by said company, a sum of money equal to ten dollars for every thousand people living on said territory, which may by him be sold as aforesaid ; always provided, that, if said Rider shall require the said company to repurchase of him the right by said company sold to him, as above mentioned, he shall do so within fifteen days from the expiration of one year from the date of these presents : and if he shall fail to do so within the time above mentioned, then said company shall be released and discharged from all liability, duty and obligation under and by virtue of this agreement." Writ dated March 24, 1874.

The declaration set forth the contract, and alleged that at the expiration of one year from the date of said contract the plaintiff " became, and was dissatisfied with his said purchase, and within fifteen days from the expiration of one year from the date of said contract, he gave the defendants due notice of his dissatisfaction,

and that he required them to repurchase said patent right, which they refused to do." Service of the writ was not made on Campbell. The answer of the other defendants was a general denial.

Trial in the Superior Court, before *Colburn*, J., who, after verdict, reported the case to this court in substance as follows :

It appeared in evidence that on October 11, 1872, the defendants, each signing his own name, assigned the patent right to the plaintiff and Edward E. Rider, who were father and son ; that the father paid the entire consideration for the purchase of the territory ; that the plaintiff became dissatisfied with his purchase within the year, and on October 20, 1873, caused to be served on each of the defendants notices signed by him, of which the following is a copy :

" To the New England Steam Washer Company : Please take notice, that having become dissatisfied with my purchase of the right to make, use and vend a certain patent right for improvement in wash boilers, granted to J. C. Tilton by letters patent of the United States, numbered 119,063, in, for and over the territory of the county of Providence in the State of Rhode Island, excepting the town of Foster in said county, I require you to repurchase from me said right, in accordance with the stipulations in your agreement with me, bearing date the 11th day of October, A. D. 1872."

The plaintiff testified that he called on the defendant Pease, after service of said notice, on October 20, 1873, or the day following, and that Pease told him that he and Thayer were the moneyed men of the partnership, and that Campbell did the business for the firm. " I asked Pease if he had not received his part or portion of the consideration for the purchase of the patent and he replied that he had, after deducting the expenses. I asked him what he would do about the contract. Pease replied that he knew nothing of the contract until informed of it by one Phillips. He said he would try to get Campbell to help me out of it." The plaintiff testified further that he had a conversation with Campbell and Pease after this action was brought, in the autumn of 1874, and that both refused then to repurchase the patent.

It was in evidence, also, that after the expiration of the year and fifteen days from the date of the contract, and some time be-

fore the bringing of this suit, the defendant Thayer called at the office of the plaintiff's attorneys, in answer to a letter from them, and there stated that he was a member of the Steam Washer Company; that he had paid in $1000; that Pease and Campbell were with him; that he was to share in the profits of the business, but was not to be called on for any more money; that he received no money from this sale, and could do nothing about the repurchase of the territory under the agreement, as he was too poor to raise money. This was all the evidence of the plaintiff upon the question of tender and refusal to repurchase, and the defendants rested their defence upon the plaintiff's evidence.

Upon this evidence the defendant Pease asked the court to rule that the plaintiff could not recover, because there was no evidence that the plaintiff had offered to reconvey the patent right conveyed to him and Edward E. Rider, as aforesaid, nor of his readiness so to do, as the record title stood in the name of the plaintiff and his son, as appeared by the deed.

The plaintiff contended that there was sufficient evidence to go to the jury upon the question, whether there had been such a refusal on the part of Pease as to amount to a waiver of tender of a deed of reassignment, and that the refusal of Thayer amounted to a waiver of a tender, and was binding upon his other copartners. It was further contended by the plaintiff that if the jury found that he made a demand on the defendants for the performance of their contract, an offer to perform on his part might be implied and understood; and that the neglect of the defendants to comply with the plaintiff's demand, without offering any reason for non-compliance, the jury might regard as dispensing with any necessity of tender.

The judge ruled that there was not sufficient evidence of a refusal to repurchase on the part of Pease to warrant the jury in finding a waiver of a tender of a deed, and that the refusal of Thayer on the ground of his poverty was not binding on the other members of the firm, for whom he did not profess to speak.

The plaintiff did not wish for a verdict against Thayer alone, and the court directed a verdict to be rendered by the jury for the defendants, which was done. The question was reported, by the consent of the parties, to this court for a decision of the law involved. If the ruling was correct, the verdict to stand; otherwise, a new trial to be ordered.

*N. A. Leonard & W. S. Greene,* for the plaintiff, cited *Rawson* v. *Johnson,* 1 East, 203 ; *Howland* v. *Leach,* 11 Pick. 151, 155 ; *Tinney* v. *Ashley,* 15 Pick. 546, 552 ; *Adams* v. *Clark,* 9 Cush. 215 ; *Cook* v. *Doggett,* 2 Allen, 439 ; *Smith* v. *Boston & Maine Railroad,* 6 Allen, 262, 273 ; *Hapgood* v. *Shaw,* 105 Mass. 276 ; *Carpenter* v. *Holcomb,* 105 Mass. 280, 284 ; *Scanlan* v *Geddes,* 112 Mass. 15.

*G. M. Stearns,* for the defendants. 1. The plaintiff was bound to reconvey to the defendants if he required them to repurchase. He could not recover the contract price without showing readiness and an offer on his part to perform his part of the contract. *Smith* v. *Boston & Maine Railroad,* 6 Allen, 262. *Collins* v. *Delaporte,* 115 Mass. 159. *Hunt* v. *Livermore,* 5 Pick. 395. *Dana* v. *King,* 2 Pick. 155.

2. The facts disclosed do not show that the plaintiff ever offered to convey to the defendants the patent rights, or that he ever realized that it was incumbent upon him to do so. Nor do they show that he was ready to perform. On the contrary it appears that he was only owner of one half the rights to be conveyed. There was no evidence that the plaintiff could get the other half to convey. In *Carpenter* v. *Holcomb,* 105 Mass. 280, 285, it appeared that the incumbrance was such that the plaintiff had the right to discharge it, and that it was understood by both parties he offered to do so. In this case the plaintiff had no power over the other half. For all that appeared Edward E. Rider would not sell his half.

3. There was no evidence of such a refusal to accept performance, if offered by the plaintiff, as would warrant the jury in finding a waiver of the right to require performance or an offer of performance. To warrant such a finding, there must be evidence of an " unqualified refusal," the plaintiff having the ability to perform and the defendant knowing he can perform. *Carpenter* v. *Holcomb, ubi supra. Pomroy* v. *Gold,* 2 Met. 500. *Cook* v. *Doggett,* 2 Allen, 439. In *Carpenter* v. *Holcomb,* the court find evidence that the refusal was unqualified on the part of the defendant, he knowing of the mortgage and not doubting the plaintiff's ability to remove it. In the case at bar the defendant Pease did not refuse absolutely, he only delayed. Neither of the defendants can be said to have waived the plaintiff's want of readi-

ness and ability to perform, for there was no allusion to the condition of the title and no positive knowledge on their part as to the position of the title. The language of refusal was much stronger in *Pomroy* v. *Gold*, cited above, than in this case. It was held no waiver. The statement of Thayer was not a positive refusal to perform. He only declared, by reason of poverty, his present inability to raise the money. But, if there was a refusal on the part of Thayer, the ruling of the court was correct. The plaintiff, by the contract, was to notify the defendants, if he required the repurchase, within a year and fifteen days. The defendants had the right to repurchase at once upon notice. The plaintiff must, therefore, be ready to convey when he gives notice that he requires the repurchase and repayment. If there was no offer to reconvey, or waiver on the part of the defendant, within that time, the plaintiff cannot recover. Furthermore, the plaintiff did not wish a verdict against Thayer alone. He therefore could have no verdict, unless what occurred between Thayer and the plaintiff's attorney affected the other members of the firm. Neither party treated the interview as anything more than one relating to his private affairs. The deed of the patent was signed by each member separately. The plaintiff had given each a notice long before. Thayer was at the office of the attorney in answer to a letter to him individually. It does not appear the letter was about this business. He was not asked to repurchase. The plaintiff's attorney did not in fact speak to him about the matter. He volunteered some information about the condition of his private finances and what he could not do. He did not say that the firm would not or could not repurchase. At least it appears that he was not asked in behalf of the firm to repurchase. It was necessary the plaintiff should have requested performance and offered to perform on his part. *Tasker* v. *Bartlett*, 5 Cush. 359.

BY THE COURT. We are of opinion that the evidence of the plaintiff's conversations with Pease and with Thayer was sufficient to warrant a jury in finding that the defendants had refused to perform the contract. It follows that the ruling of the learned judge in favor of the defendants was incorrect, and, by the terms of the report, there must be a *New trial.*